Chief Justice Robertson
delivered the Opinion of the Court.
This writ of error seeks the reversal of a decree perpetuating an Injunction to a judgment by default obtained against the defendants Kendall & Head by W. Wood assignee of the obligee, in a suit commenced in 1827, on the following note:
“We or either of us promise to pay Ben Hardin “two hundred and fifty dollars this 7th of May, “1818.
(Seal.)
“JOHN A. HEAD, (Seal )
“J ERE Ail AH KENDALL, (Seal.)
“Teste: Jo. Clark,
The Bill alledges that the note was given in consideration oían undertaking by Hardin to appear as counsel for one Wharton Ransdale in a prosecution pending against him for murder — that the defendants in error signed it merely as securities oí the mother oí Ransdale whose name to the first seal Hardin promised to procure — that she never subscribed to the no-e — ami that Hardin did not appear as counsel for Ransdale on his trial.
Hardin in bis answer, says — “that a number of “per ons we¡e mdieiéd in the Franklin circuit court “for the murder or as aiding and assisting thereto of “a in m by the name of Carter — that there was a “special term m May he believes fertile trial, and he “was employed for the whole of them: that a number “of them talked to him, but none signed the notes but “the complainants — as to the story of Ann Ransdale “he recollect ■ nothing abou; it, and he does not believe there is any truth in it — he did not know how “many would sign the notes. The whole contract “appears on two notes now in suit in the name of “Wood, a.-d he recollects no more than what those “state — except what is to be hereafter stated, lie re“fers to both those nines and the endorsements.”— He then says that he had talked to Kendall “several *213 “times about the fees since ibl8, and offered to leave “the matter to Geo. At. Bibb, as lie knew ail .moot “the matter.”
He then refers to the record of the prosecution which siiows that v» hartón Rant-dale, James Raiisdale, Elijah Kendall, John Kendall and Zepheniah Jackson were all indicted for the murder oi Carter — - tiiat a nolle prosequi was entered as to the Kendalls and James Ran. dale, on the 8th of May, 1818; and that the trial--of VVnarton Rausdale and of Jackson Was, on the same day, continued until the next term. Hardin then states in his answer “that he did appear amt argue all points arising at the May court when a part of the persons, James Rausdale, Elijah Kendall and John Kendall were discharged” — and admits that he did not attend at the next term when Wiianon Rausdale and Jackson were tried.
One of the notes referred to in the answer is that on which the judgment was rendered, and the other is as follows: — •
“We have employed Benjamin Hardin as one of ‘ the v o ‘nscl for Wharton Rausdale, James Ram-dale, “Elijah Kendall, John Kendall and Zepheniah “Jackson wuo are indicted in the Franklin circuit “court for murder, now we do agree to give said “Hardin two hundred and fifty dollars in addition “to his fee already promised if all the persons are ^discharged from the present prosecutions or if part “only are disc liar, ed then for each one that is discharged fifty dollars.
(Seal.)
“JOHN A. HEAD, (Seal.)
“JEREMIAH KENDALL, (Seal.)
“Teste: Jo. Clark,
(Endorsement.)
“N. B. I have been employed for the persons “within named, now if I am not present when the “whole of them are tried I do agree to relinquish my “fee in that proportion — that is if absent when any “one is tried one fifth and in that proportion for the “rest-”
Only two depositions were read in the case. Ben *214 jamin Head swore that Hardin was employed for $25 to endeavor to procure an oider tor bailing Wharton Ransdale, and that afterwards the defendants in error agreed to give him $250 to defend Ransdale on his final trial, and that the note on which the judgment in question was rendered was given in consideration oi the latter agreement, and does not include the fee of $25. benjamin Ransdale swore substantially to the same fatts. Head also swore that Hardin agreed that tie would charge notiimg unless he should appear on the trial. Ransd<tle swore that the contract for the $250 was made alter the prosecution had been entered: and both of Liem swore Unit Hardin was not at the trial.
The plaintiffs insist 1st that there was only a partial failure of consideration, and 2nd that if the consideration totally failed the chancellor had no jurisdiction because tiie remedy was complete at law.
On the 1st point the case is not perfectly clear:but on lull consideration of all the fatts we are inclined to concur with the circuit court in the opinion that a total failure oi consideration has been established. There can be no good reason for doubting that if the sole consideration of the note wag Hardin 's agreement to appear for Wharton Ransdale on ins final trial tne entire consideration failed.
However the fact may, in truth be, the testimony will not permit this court to presume that the fee oi $25 lor appearing on the incidental preliminary motion matte any part of the consideration of the note.
Then the only question to be considered in this branch oi the case is, whether the note in controversy was given, as tne witnesses swore it was, as a fee for appearing for Wharton Ranstiale alone, or as a fee lor appearing lor all the peisons who were prosecuted.
Notwithstanding the positive testimony contained in the depositions, the note without date for a contingent fee creates some doubt as to the true consideration of the other note, the judgment on which has been enjoined. The contingent fee waspromised for. an the persons who were prosecuted; and the plain *215 tiffs argue that the inference is clear, that the uncoilditiorml note was given also as a fee for attending to all the cases; and that therefore as three of the ties were discharged through Hardin’s instrumentality, the consideration of the latter note failed only in part. This would he the rational inference in the absence of any positive evidence to the contrary.— But there is no necessary coflict between the depositions and anything expressed in the conditional note. Though that note was given as “cm additional fee” to Hardin it might, nevertheless, have been the only fee agreed to be given by any of the persons prosecuted except Wharton Ransdale. If it were the only fee promised for the other four individuals it was “an additional fee” to Hardin — and it was not improperly described as such.
As therefore two witnesses have sworn positively and the answer of Hardin is not direct or explicit (as the consequence doubtless of a lapse of memory as to the precise circumstances of a transaction so long transpired) we do not feel authorised to dissent from the conclusion of the circuit Judge as to the actual consideration of the note. It is true the record shews that the prosecution was continued on the 8th, and consequently B. Ransdale was inaccurate in his recollection when he swore that the note (dated the 7th) was executed after the continuance. But this discrepancy is not of such a character as to discredit the witness. ¡Such a mistake might frequently be made by the most scrupulously honest men. — ■ Besides it is far from being improbable that the witness was not mistaken as to the day of the continuance, hut confounded the continuance with the failure on the 7th to obtain bail, directly after which and on the same day the note, as he said, was given-And two circumstances, in some degree, tend to forty the depositions — 1st, Hardin In his answer, says, that he was employed by all the persons who were prosecuted, hut he did not say that each agreed to give him the same fee, nor does he alledge that the unconditional note was given for any other consideration than that averred as the only one in the Bill — 2nd, It may not be unreasonable to infer, (from the fact that Wharton Ransdale was not allowed bail and *216 that James Ransdale and the two Kendalls were not onlv hailed but discharged without trial,) that Wbarton was the person who actually perpetrated the homicide, and that the other three were not deemed guilty of any felonious participation in the imputed crime. Hence it might seem, at least probable,that a more liberal and certain fee woidd have been dernanded and have been given bv him than by them. However there is nothing in the record sufficient to control the positive and unimpeached testimony of the only two witnesses.
Statute which anthorizesthe *™theP*onsiil ° aUon'of or: specialties by alea oí law. has not Ousted the chancellor of the pre-existingfurisdietiori which he possessed of relieving against obli the entire consideration had failed in cor>seqiio"ce. gation° when ofoblisree’sdelinquenev. ceilor yet has jurisdiction in such cases, provided no attemot to impeach the consideration has been made at law.
the"obligation op which it was rendered was dfili vprM as an escrow. Chancellor has no juri - diction to enjoin a jmh'sinRTit rin (he ground th-»t Obligation cannot be an escrow after its delivery to obligee.
On the 2nd point there i« less doubt. — Prior to the enactment of our statute authorising the impeaehspee.ialties by plea at ment of the consideration of law, equity had inrisdiction to relieve against a judgment on an oblio-ntion (in such a case as this) when the entire consideration had failed in consequence of the delinquen» v of the obligee without the fault or interference of the ohlio-or, and when an attempt to enforce the obligation bv legal means would have been perverting the law to purposes of injustice and oppression. The statute has not ousted this pre-existing jurisdiction of Chancery. But now [here is a concurrent jurisdiction, in such a case, provided no attempt to impeach the consideration shall have been made at law.
The ground chiefly relied on when the Bill was filed was, that the note had onlv been delivered as an escrow. That ground was howevev abandoned; and was untenable if it had not been relinquished— 1st, Because the Chancellor had no inrisdiction to enjoin the judgment on such an allegation. 2nd, Because there is no proof of the allegation — and 3rd, Because the obljgntioncould not have been an escrow after its delivery to the obligee.
It mav not he improper however to remark, that some countenance was given t.o the alienation and some doubt fvef unexolained) was excited by the fact tliat the first seal remained blank. •/
It may he observed also that the Bill itself is not, in all respects, as clear or as accurate in its alleo-ations as such Bills generally are, or as it is advisable that they should ever be. Altogether the case is so *217 confused as to leave ground for some doubt and suspidón respecting what maybe true and just between the parties.
Hardin for plaintiffs; Sanders for defendants.
But carefully considering all the circumstances in all their bearings, we do not feel at liberty to reverse the decree of the circuit court.
Wherefore the decree must be affirmed;